**EDGCOMB LAW GROUP, LLP**
TIFFANY R. HEDGPETH (SBN 175134)
thedgpeth@edgcomb-law.com
355 S. Grand Ave., Ste. 2450, #2049
Los Angeles, CA  90071-9500
Telephone: (818) 861-7618

*Counsel for Defendant,*
*Arcadia Products, LLC*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER,<br><br>Plaintiff,<br><br>vs.<br><br>ARCADIA PRODUCTS, LLC,<br><br>Defendant. | No. 2:24-cv-03445-FLA-SSC<br><br>**ARCADIA'S ANSWER TO COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**<br><br>**JURY TRIAL DEMANDED** |

Defendant Arcadia Products, LLC ("Arcadia") hereby submits its Answer to the Complaint for Declaratory and Injunctive Relief and Civil Penalties (Doc. 1, "Complaint") filed by Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper").

## I.    JURISDICTION AND VENUE

1.    Arcadia admits that LA Waterkeeper filed this action against Arcadia pursuant to the citizen suit provision of the federal Clean Water Act ("CWA"), 33 U.S.C. § 1365, and, except as otherwise stated herein, admits that the Court has subject matter jurisdiction.  Arcadia denies that LA Waterkeeper is entitled to any relief.

2.    Arcadia admits that it received a letter from LA Waterkeeper dated February 21, 2024, purporting to be a notice of violations and intent to file suit under the CWA ("Notice Letter").  Arcadia admits that Exhibit 1 to the Complaint appears to be a true and correct copy of the Notice Letter.  Arcadia lacks sufficient information to admit or deny the remaining allegations in Paragraph 2 and therefore denies those allegations.

3.    Arcadia admits that more than sixty days have passed since it received the Notice Letter.  Arcadia admits that neither the U.S. Environmental Protection Agency ("EPA") nor the California State Water Resources Control Board ("State Board") has commenced a court action against Arcadia.  Arcadia lacks sufficient

information to admit or deny the remaining allegations in Paragraph 3 and therefore denies those allegations.

4.    Arcadia admits that venue is proper in the Central District of California because the sources of the alleged violations are located within the District.  Arcadia admits that intra-district venue is proper in Los Angeles, California, because the sources of the alleged violations are located within Los Angeles County, California.

## II.    **INTRODUCTION**

5.    Arcadia admits that it operates facilities located at 2301 E Vernon Avenue ("Vernon Ave Facility"), 2665 Leonis Boulevard ("Leonis Facility"), and 3225 E Washington Boulevard ("Washington Facility"), in Vernon, California 90058 (each a "Facility" and collectively, "Facilities").  Arcadia also admits that it owns a portion of the Washington Facility, including the improvements, but denies that it owns all the underlying land.  Arcadia also denies that it owns the Vernon Facility and Leonis Facility.  Arcadia admits that the Complaint purports to seek relief for alleged CWA violations at each Facility.

6.    Arcadia admits that it discharges stormwater from the Facilities into the Los Angeles municipal storm sewer system, which, on information and belief, eventually drains into the Los Angeles River.  Arcadia admits the Los Angeles River eventually drains into the Pacific Ocean.  Arcadia denies that it generally discharges

"pollutant-contaminated" stormwater and denies all other allegations in Paragraph 6 not expressly admitted.

7.    Paragraph 7 alleges legal conclusions to which no response is required. To the extent a response is required, Arcadia denies the allegations in Paragraph 7.

8.    Arcadia denies the allegations in Paragraph 8.

9.    Arcadia admits that, in certain instances, it has discharged stormwater from the Facilities containing zinc at concentrations that indicate an exceedance of the zinc Numeric Effluent Limitation ("NEL") as defined by § V.C.1 of the permit identified in Paragraph 9 of the Complaint ("General Permit").  However, Arcadia denies that any NEL exceedances violated the General Permit or the CWA.  Arcadia also denies that it generally is in violation of the General Permit or that all discharges of stormwater from the Facilities have violated, or will violate, the General Permit. Arcadia denies all other allegations in Paragraph 9 not expressly admitted.

10.    Arcadia denies that it generally is in ongoing and continuous violation of the General Permit or that any discharges of stormwater from the Facilities have violated, or will violate, the General Permit.  Arcadia denies the remaining allegations in Paragraph 10.

11.    Arcadia lacks sufficient information to admit or deny the allegations in Paragraph 11 and therefore denies those allegations.

12. Arcadia lacks sufficient information to admit or deny the allegations in Paragraph 12 and therefore denies those allegations.

13. Arcadia lacks sufficient information to admit or deny the allegations in Paragraph 13 and therefore denies those allegations.

14. Arcadia lacks sufficient information to admit or deny the allegations in Paragraph 14 and therefore denies those allegations.

15. Arcadia lacks sufficient information to admit or deny the allegations in Paragraph 15 and therefore denies those allegations.

16. Arcadia lacks sufficient information to admit or deny the allegations in Paragraph 16 and therefore denies those allegations.

17. Arcadia denies that its Facilities contribute to the impairment of downstream waters and wildlife, expose people to toxins, or harm the social and economic benefits of Los Angeles' waterways. Arcadia lacks sufficient information to admit or deny the remaining allegations in Paragraph 17 and therefore denies those allegations.

18. Arcadia admits the allegations in Paragraph 18.

19. Arcadia admits the allegations in Paragraph 19.

20. Arcadia admits the allegations in Paragraph 20.

21. Arcadia admits the allegations in Paragraph 21.

22. Arcadia admits the allegations in Paragraph 22.

23.     Arcadia lacks sufficient information to admit or deny the allegations in Paragraph 23 and therefore denies those allegations.

24.     Arcadia admits that Appendix J to the 2024 California Integrated Report, which contains the 2024 Draft 303(d) list for California, includes the proposed additional impairments listed in Paragraph 24.

25.     Arcadia lacks sufficient information to admit or deny the allegations in Paragraph 25 and therefore denies those allegations.

## III.    **PARTIES**

26.     Arcadia lacks sufficient information to admit or deny the allegations in Paragraph 26 and therefore denies those allegations.

27.     Arcadia lacks sufficient information to admit or deny the allegations in Paragraph 27 and therefore denies those allegations.

28.     Arcadia lacks sufficient information to admit or deny the allegations in Paragraph 28 and therefore denies those allegations.

29.     Arcadia lacks sufficient information to admit or deny the allegations in Paragraph 29 and therefore denies those allegations.

30.     Arcadia lacks sufficient information to admit or deny the allegations in Paragraph 30 and therefore denies those allegations.

31.     Arcadia lacks sufficient information to admit or deny the allegations in Paragraph 31 and therefore denies those allegations.

32.     Arcadia denies the allegations in Paragraph 32.

33.     Arcadia denies the allegations in Paragraph 32.

34.     Arcadia admits the allegations in Paragraph 34.

35.     Arcadia admits the allegations in Paragraph 35.

36.     Arcadia admits that it operates each Facility.  Arcadia also admits that it owns a portion of the Washington Facility, including the improvements, but denies that it owns all the underlying land.  Arcadia also denies that it owns the Vernon Facility and Leonis Facility.  Arcadia admits that it has submitted Notices of Intent to comply with the General Permit for each Facility.

37.     Arcadia admits the allegations in Paragraph 37.

38.     Arcadia denies the allegations in Paragraph 38.

## IV.    LEGAL BACKGROUND

### A. Clean Water Act

39.     Paragraph 39 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 39.

40.     Paragraph 40 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 40.

41.     Paragraph 41 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 41.

42.     Paragraph 42 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 42.

43.     Paragraph 43 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 43.

44.     Paragraph 44 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 44.

45.     Paragraph 45 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 45.

46.     Paragraph 46 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 46.

///

///

## B. California's General Industrial Storm Water Permit

47.     Paragraph 47 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 47.

48.     Paragraph 48 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 48.

49.     Paragraph 49 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 49.

50.     Paragraph 50 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 50.

51.     Paragraph 51 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 51.

52.     Paragraph 52 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 52.

53.    Paragraph 53 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 53.

54.    Paragraph 54 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 54.

55.    Paragraph 55 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 55.

56.    Paragraph 56 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 56.

57.    Paragraph 57 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 57.

58.    Paragraph 58 alleges legal conclusions to which no response is required, but to the extent a response is required, Arcadia denies the legal conclusions in Paragraph 58.  Arcadia admits that, in certain instances, it has not met the zinc NEL in the General Permit but denies that any exceedances of the NEL violated the General Permit or the CWA.  Arcadia also denies that its stormwater

discharges will exceed any applicable NELs under the General Permit in the future.

59.     Paragraph 59 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 59.

60.     Paragraph 60 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 60.

61.     Paragraph 61 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 61.

62.     Paragraph 62 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 62.

63.     Paragraph 63 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 63.

64.     Paragraph 64 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 64.

65.    Paragraph 65 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 65.

66.    Paragraph 66 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 66.

67.    Paragraph 67 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 67.

68.    Paragraph 68 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 68.

69.    Paragraph 69 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 69.

70.    Paragraph 70 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 70.

71.     Paragraph 71 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 71.

72.     Paragraph 72 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 72.

73.     Paragraph 73 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 73.

74.     Paragraph 74 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 74.

75.     Paragraph 75 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 75.

## V.    **STATEMENT OF FACTS**

### C.    **The Facilities**

#### *1.  Vernon Ave Facility*

76.     Arcadia admits that it operates the Vernon Ave Facility but denies that it owns the Vernon Ave Facility.  Arcadia admits the remaining allegations in

1   Paragraph 76.

2       77.     Arcadia admits that the Vernon Ave Facility's operating hours include

3   5:30 a.m. to 3:00 p.m., Monday through Friday, but denies that Paragraph 77 fully

4   states the Vernon Ave Facility's operating hours.

5       78.     Arcadia denies that the Vernon Ave Facility is "approximately

6   258,336" square feet and denies that activities at the Vernon Ave Facility include

7   "grinding." Arcadia admits that it conducts the other activities listed in Paragraph

8   78 at the Vernon Ave Facility and that it conducts certain industrial activities at the

9   Facility but denies that every activity listed in Paragraph 78 is an industrial activity

10  under the General Permit and CWA. Arcadia denies any remaining allegations in

11  Paragraph 78.

12      79.     Arcadia admits that, for purposes of the General Permit, the Vernon

13  Ave Facility operates under Standard Industrial Classification ("SIC") Code 3499.

14      80.     Arcadia admits the allegations in Paragraph 80.

15      81.     Arcadia admits the allegations in Paragraph 81.

16      82.     Arcadia admits the allegations in Paragraph 82.

17      83.     Arcadia denies that it collects and discharges storm water associated

18  with industrial activities at the Vernon Ave Facility through at least three (3)

19  discharge points. Regarding the remaining allegations in Paragraph 83 that are

20  based on LA Waterkeeper's interpretation of the Vernon Ave 2022 SWPPP, Arcadia

states that the document speaks for itself.  Arcadia denies any remaining allegations in Paragraph 83.

84.    Regarding the allegations in Paragraph 84 that are based on LA Waterkeeper's interpretation of the Vernon Ave 2022 SWPPP, Arcadia states that the document speaks for itself.  Arcadia denies any remaining allegations in Paragraph 84.

85.    Regarding the allegations in Paragraph 85 that are based on LA Waterkeeper's interpretation of the Vernon Ave 2022 SWPPP, Arcadia states that the document speaks for itself.  Arcadia denies any remaining allegations in Paragraph 85.

86.    Regarding the allegations in Paragraph 86 that are based on LA Waterkeeper's interpretation of the Vernon Ave 2022 SWPPP, Arcadia states that the document speaks for itself.  Arcadia denies any remaining allegations in Paragraph 86.

87.    Arcadia denies the allegations in Paragraph 87.

88.    Arcadia admits that stormwater discharges from the Vernon Ave Facility enter the Los Angeles municipal storm sewer system, which ultimately discharges to the Los Angeles River.

89.     Arcadia admits that the Los Angeles River flows into the Los Angeles Estuary, San Pedro Bay, and ultimately, the Pacific Ocean.  Arcadia denies that it is discharging pollutants to the Los Angeles River or any other waterway.

### 2.   *Leonis Facility*

90.     Arcadia admits that it operates the Leonis Facility but denies that it owns the Leonis Facility.  Arcadia admits the remaining allegations in Paragraph 90.

91.     Arcadia admits that the Leonis Facility's operating hours include 5:00 a.m. to 3:30 p.m., Monday through Friday, and some Saturdays from 5:00 a.m. to 1:30 p.m. but denies that the Leonis Facility operates every Saturday.  Arcadia also denies that Paragraph 91 fully states the Leonis Facility's operating hours.

92.     Arcadia denies that the Leonis Facility is "approximately 196,470" square feet and denies that activities at the Leonis Facility include "grinding." Arcadia admits that it conducts the other activities listed in Paragraph 92 at the Leonis Facility and that it conducts certain industrial activities at the Facility but denies that every activity listed in Paragraph 92 is an industrial activity under the General Permit and CWA.  Arcadia denies any remaining allegations in Paragraph 92.

93.     Arcadia admits that, for purposes of the General Permit, the Leonis Facility operates under SIC Code 3442.

94.    Arcadia admits the allegations in Paragraph 94.

95.    Arcadia admits the allegations in Paragraph 95.

96.    Arcadia admits the allegations in Paragraph 96.

97.    Arcadia admits that it collects and discharges certain storm water associated with industrial activities at the Leonis Facility through at least one (1) discharge point, but denies that all stormwater discharges at the Facility are associated with industrial activity.    Regarding the remaining allegations in Paragraph 97 that are based on LA Waterkeeper's interpretation of the Leonis 2022 SWPPP, Arcadia states that the document speaks for itself.    Arcadia denies any remaining allegations in Paragraph 97.

98.    Regarding the allegations in Paragraph 98 that are based on LA Waterkeeper's interpretation of the Leonis 2022 SWPPP, Arcadia states that the document speaks for itself.    Arcadia denies any remaining allegations in Paragraph 98.

99.    Arcadia denies the allegations in Paragraph 99.

100.    Arcadia admits that stormwater discharges from the Leonis Facility enter the Los Angeles municipal storm sewer system, which ultimately discharges to the Los Angeles River.

1    101.   Arcadia admits that the Los Angeles River flows into the Los Angeles

2    Estuary, San Pedro Bay, and ultimately, the Pacific Ocean.  Arcadia denies that it is

3    discharging pollutants to the Los Angeles River or any other waterway.

4            3.   *Washington Facility*

5    102.   Arcadia admits that it operates the Washington Facility and that it owns

6    a portion of the Washington Facility, including the improvements, but denies that it

7    owns all the underlying land.  Arcadia also denies that the Washington Facility

8    "engages in the design and fabrication of architectural metal products."

9    103.   Arcadia admits the allegations in Paragraph 103.

10   104.   Arcadia denies that the Washington Facility is "approximately

11   220,429" square feet.  Arcadia also denies that it fabricates architectural metal

12   products or stores significant volumes of oil at the Washington Facility.  Arcadia

13   admits that it conducts the other activities listed in Paragraph 104 at the Washington

14   Facility and that it conducts certain industrial activities at the Facility but denies that

15   every activity listed in Paragraph 104 is an industrial activity under the General

16   Permit and CWA.  Arcadia denies any remaining allegations in Paragraph 104.

17   105.   Arcadia admits that, for purposes of the General Permit, the

18   Washington Facility operates under SIC Codes 3471 and 3442.

19   106.   Arcadia admits the allegations in Paragraph 106.

20   107.   Arcadia admits the allegations in Paragraph 107.

108.    Arcadia admits the allegations in Paragraph 108.

109.    Arcadia denies that it collects and discharges storm water at the Leonis Facility through at least seven (7) discharge points.    Regarding the remaining allegations in Paragraph 109 that are based on LA Waterkeeper's interpretation of the Washington 2022 SWPPP, Arcadia states that the document speaks for itself. Arcadia denies any remaining allegations in Paragraph 109.

110.    Regarding the allegations in Paragraph 110 that are based on LA Waterkeeper's interpretation of the Washington 2022 SWPPP, Arcadia states that the document speaks for itself.    Arcadia denies that the current site map in its current revised SWPPP fails to identify where stormwater discharges from Discharge Point 2.  Arcadia denies any remaining allegations in Paragraph 110.

111.    Regarding the allegations in Paragraph 111 that are based on LA Waterkeeper's interpretation of the Washington 2022 SWPPP, Arcadia states that the document speaks for itself.  Arcadia revised and uploaded a new SWPPP for the Washington Facility.  Arcadia denies any remaining allegations in Paragraph 111.

112.    Regarding the allegations in Paragraph 112 that are based on LA Waterkeeper's interpretation of the Washington 2022 SWPPP, Arcadia states that the document speaks for itself.    Arcadia denies any remaining allegations in Paragraph 112.

113.    Regarding the allegations in Paragraph 113 that are based on LA Waterkeeper's interpretation of the Washington 2022 SWPPP, Arcadia states that the document speaks for itself.  Arcadia revised and uploaded a new SWPPP for the Washington Facility.  Arcadia denies any remaining allegations in Paragraph 113.

114.    Regarding the allegations in Paragraph 114 that are based on LA Waterkeeper's interpretation of the Washington 2022 SWPPP, Arcadia states that the document speaks for itself.  Arcadia denies any remaining allegations in Paragraph 114.

115.    Arcadia admits that the Washington Facility discharges storm water from discharge points not identified by the Washington 2022 SWPPP.

116.    Arcadia admits that stormwater discharges from the Washington Facility enter the Los Angeles municipal storm sewer system, which ultimately discharges to the Los Angeles River.

117.    Arcadia admits that the Los Angeles River flows into the Los Angeles Estuary, San Pedro Bay, and ultimately, the Pacific Ocean.  Arcadia denies that it is discharging pollutants to the Los Angeles River or any other waterway.

118.    Paragraph 118 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 118.

119. Paragraph 119 alleges legal conclusions to which no response is required. To the extent a response is required, Arcadia denies the allegations in Paragraph 119.

120. Paragraph 120 alleges legal conclusions to which no response is required. To the extent a response is required, Arcadia denies the allegations in Paragraph 120.

121. Paragraph 121 alleges legal conclusions to which no response is required. To the extent a response is required, Arcadia denies the allegations in Paragraph 121.

### D.    The Facilities' Storm Water Discharges

122. Arcadia admits that the General Permit regulates certain stormwater discharges associated with industrial activity, including for some of the pollutants listed in Paragraph 122. Arcadia denies any remaining allegations in Paragraph 122.

123. Arcadia admits that the General Permit regulates certain stormwater discharges associated with industrial activity, including for some of the pollutants listed in Paragraph 123. Arcadia denies any remaining allegations in Paragraph 123.

124. Arcadia admits that the General Permit regulates certain stormwater discharges associated with industrial activity, including for some of the pollutants listed in Paragraph 124. Arcadia denies any remaining allegations in Paragraph 124.

125.    Arcadia admits that the storm water samples referenced in Paragraph 125 contained zinc concentrations exceeding the U.S. EPA Benchmark for zinc, but denies that instantaneous concentrations should be compared to U.S. EPA Benchmarks and denies that the U.S. EPA Benchmark for zinc is relevant under all receiving water conditions.  Arcadia also denies any implication that exceedance of the U.S. EPA Benchmark for zinc demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 125 demonstrate a violation of the General Permit or CWA.

126.    Arcadia admits that the stormwater samples referenced in Paragraph 126 contained zinc concentrations exceeding the U.S. EPA Benchmark for zinc, but denies that instantaneous concentrations should be compared to U.S. EPA Benchmarks and denies that the U.S. EPA Benchmark for zinc is relevant under all receiving water conditions.  Arcadia also denies any implication that exceedance of the U.S. EPA Benchmark for zinc demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 126 demonstrate a violation of the General Permit or CWA.

127.    Arcadia admits that the stormwater samples referenced in Paragraph 125 contained aluminum concentrations exceeding the U.S. EPA Benchmark for aluminum, but denies that instantaneous concentrations should be compared to U.S. EPA Benchmarks.  Arcadia also denies any implication that exceedance of the U.S.

EPA Benchmark for aluminum demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 126 demonstrate a violation of the General Permit or CWA.

128.    Arcadia denies the allegations in Paragraph 128.

129.    Arcadia admits that the stormwater samples referenced in Paragraph 129 contained zinc concentrations exceeding the U.S. EPA Benchmark for zinc, but denies that instantaneous concentrations should be compared to U.S. EPA Benchmarks and denies that the U.S. EPA Benchmark for zinc is relevant under all receiving water conditions.  Arcadia also denies any implication that exceedance of the U.S. EPA Benchmark for zinc demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 129 demonstrate a violation of the General Permit or CWA.

130.    Arcadia admits that the stormwater samples referenced in Paragraph 130 contained aluminum concentrations exceeding the U.S. EPA Benchmark for aluminum but denies that instantaneous concentrations should be compared to U.S. EPA Benchmarks.  Arcadia also denies any implication that exceedance of the U.S. EPA Benchmark for aluminum demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 130 demonstrate a violation of the General Permit or CWA.

131.    Arcadia denies the allegations in Paragraph 131.

132.    Arcadia admits that the stormwater samples referenced in Paragraph 132 contained zinc concentrations exceeding the U.S. EPA Benchmark for zinc but denies that instantaneous concentrations should be compared to U.S. EPA Benchmarks and denies that the U.S. EPA Benchmark for zinc is relevant under all receiving water conditions.  Arcadia also denies any implication that exceedance of the U.S. EPA Benchmark for zinc demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 132 demonstrate a violation of the General Permit or CWA.

133.    Arcadia denies the allegations in Paragraph 133.

134.    Arcadia admits that the stormwater samples referenced in Paragraph 134 contained zinc concentrations exceeding the U.S. EPA Benchmark for zinc but denies that instantaneous concentrations should be compared to U.S. EPA Benchmarks and denies that the U.S. EPA Benchmark for zinc is relevant under all receiving water conditions.  Arcadia also denies any implication that exceedance of the U.S. EPA Benchmark for zinc demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 134 demonstrate a violation of the General Permit or CWA.

135.    Arcadia admits that the stormwater samples referenced in Paragraph 135 contained zinc concentrations exceeding the U.S. EPA Benchmark for zinc but denies that instantaneous concentrations should be compared to U.S. EPA

Benchmarks and denies that the U.S. EPA Benchmark for zinc is relevant under all receiving water conditions. Arcadia also denies any implication that exceedance of the U.S. EPA Benchmark for zinc demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 135 demonstrate a violation of the General Permit or CWA.

136.    Arcadia admits that the stormwater samples referenced in Paragraph 136 contained zinc concentrations exceeding the U.S. EPA Benchmark for zinc but denies that instantaneous concentrations should be compared to U.S. EPA Benchmarks and denies that the U.S. EPA Benchmark for zinc is relevant under all receiving water conditions. Arcadia also denies any implication that exceedance of the U.S. EPA Benchmark for zinc demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 136 demonstrate a violation of the General Permit or CWA.

137.    Arcadia admits that the stormwater samples referenced in Paragraph 137 contained zinc concentrations exceeding the U.S. EPA Benchmark for zinc but denies that instantaneous concentrations should be compared to U.S. EPA Benchmarks and denies that the U.S. EPA Benchmark for zinc is relevant under all receiving water conditions. Arcadia also denies any implication that exceedance of the U.S. EPA Benchmark for zinc demonstrates a violation of the General Permit or

1    CWA or that the samples referenced in Paragraph 137 demonstrate a violation of

2    the General Permit or CWA.

3         138.    Arcadia admits that the stormwater samples referenced in Paragraph

4    138 contained zinc concentrations exceeding the U.S. EPA Benchmark for zinc but

5    denies that instantaneous concentrations should be compared to U.S. EPA

6    Benchmarks and denies that the U.S. EPA Benchmark for zinc is relevant under all

7    receiving water conditions.  Arcadia also denies any implication that exceedance of

8    the U.S. EPA Benchmark for zinc demonstrates a violation of the General Permit or

9    CWA or that the samples referenced in Paragraph 138 demonstrate a violation of

10   the General Permit or CWA.

11        139.    Arcadia admits that the stormwater samples referenced in Paragraph

12   139 contained copper concentrations exceeding the U.S. EPA Benchmark for copper

13   but denies that instantaneous concentrations should be compared to U.S. EPA

14   Benchmarks.  Arcadia also denies any implication that exceedance of the U.S. EPA

15   Benchmark for copper demonstrates a violation of the General Permit or CWA or

16   that the samples referenced in Paragraph 139 demonstrate a violation of the General

17   Permit or CWA.

18        140.    Arcadia admits that the stormwater samples referenced in Paragraph

19   139 contained total suspended solids ("TSS") concentrations exceeding the U.S.

20   EPA Benchmark for TSS but denies that instantaneous concentrations should be

compared to U.S. EPA Benchmarks. Arcadia also denies any implication that exceedance of the U.S. EPA Benchmark for TSS demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 140 demonstrate a violation of the General Permit or CWA.

141. Arcadia admits that the stormwater samples referenced in Paragraph 141 contained zinc concentrations exceeding the U.S. EPA Benchmark for zinc but denies that instantaneous concentrations should be compared to U.S. EPA Benchmarks and denies that the U.S. EPA Benchmark for zinc is relevant under all receiving water conditions. Arcadia also denies any implication that exceedance of the U.S. EPA Benchmark for zinc demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 141 demonstrate a violation of the General Permit or CWA.

142. Arcadia admits that the stormwater samples referenced in Paragraph 142 contained zinc concentrations exceeding the U.S. EPA Benchmark for zinc but denies that instantaneous concentrations should be compared to U.S. EPA Benchmarks and denies that the U.S. EPA Benchmark for zinc is relevant under all receiving water conditions. Arcadia also denies any implication that exceedance of the U.S. EPA Benchmark for zinc demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 142 demonstrate a violation of the General Permit or CWA.

143.   Arcadia admits that the stormwater samples referenced in Paragraph 143 contained zinc concentrations exceeding the U.S. EPA Benchmark for zinc but denies that instantaneous concentrations should be compared to U.S. EPA Benchmarks and denies that the U.S. EPA Benchmark for zinc is relevant under all receiving water conditions.  Arcadia also denies any implication that exceedance of the U.S. EPA Benchmark for zinc demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 143 demonstrate a violation of the General Permit or CWA.

144.   Arcadia admits that the stormwater samples referenced in Paragraph 144 contained zinc concentrations exceeding the U.S. EPA Benchmark for zinc but denies that instantaneous concentrations should be compared to U.S. EPA Benchmarks and denies that the U.S. EPA Benchmark for zinc is relevant under all receiving water conditions.  Arcadia also denies any implication that exceedance of the U.S. EPA Benchmark for zinc demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 144 demonstrate a violation of the General Permit or CWA.

145.   Arcadia admits that the stormwater samples referenced in Paragraph 145 contained zinc concentrations exceeding the U.S. EPA Benchmark for zinc but denies that instantaneous concentrations should be compared to U.S. EPA Benchmarks and denies that the U.S. EPA Benchmark for zinc is relevant under all

receiving water conditions.  Arcadia also denies any implication that exceedance of the U.S. EPA Benchmark for zinc demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 145 demonstrate a violation of the General Permit or CWA.

146.   Arcadia admits that the stormwater samples referenced in Paragraph 146 contained zinc concentrations exceeding the U.S. EPA Benchmark for zinc but denies that instantaneous concentrations should be compared to U.S. EPA Benchmarks and denies that the U.S. EPA Benchmark for zinc is relevant under all receiving water conditions.  Arcadia also denies any implication that exceedance of the U.S. EPA Benchmark for zinc demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 146 demonstrate a violation of the General Permit or CWA.

147.   Arcadia admits that the stormwater samples referenced in Paragraph 147 contained zinc concentrations exceeding the U.S. EPA Benchmark for zinc but denies that instantaneous concentrations should be compared to U.S. EPA Benchmarks and denies that the U.S. EPA Benchmark for zinc is relevant under all receiving water conditions.  Arcadia also denies any implication that exceedance of the U.S. EPA Benchmark for zinc demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 147 demonstrate a violation of the General Permit or CWA.

148.   Arcadia admits that the stormwater samples referenced in Paragraph 148 contained zinc concentrations exceeding the U.S. EPA Benchmark for zinc but denies that instantaneous concentrations should be compared to U.S. EPA Benchmarks and denies that the U.S. EPA Benchmark for zinc is relevant under all receiving water conditions.  Arcadia also denies any implication that exceedance of the U.S. EPA Benchmark for zinc demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 148 demonstrate a violation of the General Permit or CWA.

149.   Arcadia admits that the stormwater samples referenced in Paragraph 149 contained zinc concentrations exceeding the U.S. EPA Benchmark for zinc but denies that instantaneous concentrations should be compared to U.S. EPA Benchmarks and denies that the U.S. EPA Benchmark for zinc is relevant under all receiving water conditions.  Arcadia also denies any implication that exceedance of the U.S. EPA Benchmark for zinc demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 149 demonstrate a violation of the General Permit or CWA.

150.   Arcadia admits that the stormwater samples referenced in Paragraph 150 contained zinc concentrations exceeding the U.S. EPA Benchmark for zinc but denies that instantaneous concentrations should be compared to U.S. EPA Benchmarks and denies that the U.S. EPA Benchmark for zinc is relevant under all

receiving water conditions.  Arcadia also denies any implication that exceedance of the U.S. EPA Benchmark for zinc demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 150 demonstrate a violation of the General Permit or CWA.

151.   Arcadia admits that the stormwater samples referenced in Paragraph 151 contained zinc concentrations exceeding the U.S. EPA Benchmark for zinc but denies that instantaneous concentrations should be compared to U.S. EPA Benchmarks and denies that the U.S. EPA Benchmark for zinc is relevant under all receiving water conditions.  Arcadia also denies any implication that exceedance of the U.S. EPA Benchmark for zinc demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 151 demonstrate a violation of the General Permit or CWA.

152.   Arcadia admits that the stormwater samples referenced in Paragraph 152 contained zinc concentrations exceeding the U.S. EPA Benchmark for zinc but denies that instantaneous concentrations should be compared to U.S. EPA Benchmarks and denies that the U.S. EPA Benchmark for zinc is relevant under all receiving water conditions.  Arcadia also denies any implication that exceedance of the U.S. EPA Benchmark for zinc demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 152 demonstrate a violation of the General Permit or CWA.

153.   Arcadia admits that the stormwater samples referenced in Paragraph 153 contained zinc concentrations exceeding the U.S. EPA Benchmark for zinc but denies that instantaneous concentrations should be compared to U.S. EPA Benchmarks and denies that the U.S. EPA Benchmark for zinc is relevant under all receiving water conditions.  Arcadia also denies any implication that exceedance of the U.S. EPA Benchmark for zinc demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 153 demonstrate a violation of the General Permit or CWA.

154.   Arcadia admits that the stormwater samples referenced in Paragraph 154 contained zinc concentrations exceeding the U.S. EPA Benchmark for zinc but denies that instantaneous concentrations should be compared to U.S. EPA Benchmarks and denies that the U.S. EPA Benchmark for zinc is relevant under all receiving water conditions.  Arcadia also denies any implication that exceedance of the U.S. EPA Benchmark for zinc demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 154 demonstrate a violation of the General Permit or CWA.

155.   Arcadia admits that the stormwater sample for Sample Point 1 referenced in Paragraph 155 contained aluminum concentrations exceeding the U.S. EPA Benchmark for aluminum but denies that the other stormwater samples contained aluminum concentrations exceeding the U.S. EPA Benchmark for

aluminum.  Arcadia denies that instantaneous concentrations should be compared to U.S. EPA Benchmarks.  Arcadia also denies any implication that exceedance of the U.S. EPA Benchmark for zinc demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 155 demonstrate a violation of the General Permit or CWA.

156.  Arcadia admits that the stormwater sample for Sample Point 3 referenced in Paragraph 156 contained aluminum concentrations exceeding the U.S. EPA Benchmark for aluminum but denies that the other stormwater sample contained aluminum concentrations exceeding the U.S. EPA Benchmark for aluminum.  Arcadia denies that instantaneous concentrations should be compared to U.S. EPA Benchmarks.  Arcadia also denies any implication that exceedance of the U.S. EPA Benchmark for zinc demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 156 demonstrate a violation of the General Permit or CWA.

157.  Arcadia denies the allegations in Paragraph 157.

158.  Arcadia denies the allegations in Paragraph 158.

159.  Arcadia admits that the stormwater sample for Sample Point 4 referenced in Paragraph 159 contained aluminum concentrations exceeding the U.S. EPA Benchmark for aluminum but denies that the other stormwater sample contained aluminum concentrations exceeding the U.S. EPA Benchmark for

aluminum.  Arcadia denies that instantaneous concentrations should be compared to U.S. EPA Benchmarks.  Arcadia also denies any implication that exceedance of the U.S. EPA Benchmark for zinc demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 159 demonstrate a violation of the General Permit or CWA.

160.    Arcadia admits that the stormwater samples referenced in Paragraph 160 contained aluminum concentrations exceeding the U.S. EPA Benchmark for aluminum but denies that instantaneous concentrations should be compared to U.S. EPA Benchmarks.  Arcadia also denies any implication that exceedance of the U.S. EPA Benchmark for aluminum demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 160 demonstrate a violation of the General Permit or CWA.

161.    Arcadia denies the allegations in Paragraph 161.

162.    Arcadia denies the allegations in Paragraph 162.

163.    Arcadia denies the allegations in Paragraph 163.

164.    Arcadia denies the allegations in Paragraph 164.

165.    Arcadia denies the allegations in Paragraph 165.

166.    Arcadia denies the allegations in Paragraph 166.

167.    Arcadia denies the allegations in Paragraph 167.

168.   Arcadia admits that the stormwater samples referenced in Paragraph 168 contained TSS concentrations exceeding the U.S. EPA Benchmark for TSS but denies that instantaneous concentrations should be compared to U.S. EPA Benchmarks.  Arcadia also denies any implication that exceedance of the U.S. EPA Benchmark for TSS demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 168 demonstrate a violation of the General Permit or CWA.

169.   Arcadia admits that the stormwater samples referenced in Paragraph 169 contained TSS concentrations exceeding the U.S. EPA Benchmark for TSS but denies that instantaneous concentrations should be compared to U.S. EPA Benchmarks.  Arcadia also denies any implication that exceedance of the U.S. EPA Benchmark for TSS demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 169 demonstrate a violation of the General Permit or CWA.

170.   Arcadia lacks sufficient information to admit or deny the allegations in Paragraph 170 regarding the basis of LA Waterkeeper's allegations and therefore denies those allegations.

171.   Arcadia denies the allegations in Paragraph 171.

172.   Arcadia denies the allegations in Paragraph 172.

173.   Arcadia denies the allegations in Paragraph 173.

174.   Paragraph 174 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 174.  Arcadia specifically denies that it has failed to develop, implement, and maintain BMPs at the Vernon Ave Facility.

175.   Paragraph 175 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 175.  Arcadia specifically denies that it has failed to develop, implement, and maintain BMPs at the Leonis Facility.

176.   Paragraph 176 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 176.  Arcadia specifically denies that it has failed to develop, implement, and maintain BMPs at the Washington Facility.

177.   Paragraph 177 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 177.

178.   Arcadia denies that the California Toxics Rule ("CTR") establishes a "limit for zinc" applicable to stormwater discharges at the Washington Facility. Arcadia admits that the stormwater samples referenced in Paragraph 180 contained zinc concentrations exceeding the CTR's numeric criterion for zinc but denies that instantaneous concentrations should be compared to CTR numeric criteria and that

the CTR numeric criterion for zinc is relevant under all receiving water conditions. Arcadia also denies any implication that exceedance of the CTR's numeric criterion for zinc per se demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 180 demonstrate a violation of the General Permit or CWA.

179.   Arcadia denies that the CTR establishes a "limit for zinc" applicable to stormwater discharges at the Washington Facility.   Arcadia admits that the stormwater samples referenced in Paragraph 179 contained zinc concentrations exceeding the CTR's numeric criterion for zinc but denies that instantaneous concentrations should be compared to CTR numeric criteria and that the CTR numeric criterion for zinc is relevant under all receiving water conditions.   Arcadia also denies any implication that exceedance of the CTR's numeric criterion for zinc per se demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 179 demonstrate a violation of the General Permit or CWA.

180.   Arcadia denies that the CTR establishes a "limit for zinc" applicable to stormwater discharges at the Washington Facility.   Arcadia admits that the stormwater samples referenced in Paragraph 180 contained zinc concentrations exceeding the CTR's numeric criterion for zinc but denies that instantaneous concentrations should be compared to CTR numeric criteria and that the CTR numeric criterion for zinc is relevant under all receiving water conditions.   Arcadia

also denies any implication that exceedance of the CTR's numeric criterion for zinc per se demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 180 demonstrate a violation of the General Permit or CWA.

181.    Arcadia denies the allegations in Paragraph 181.

182.    Arcadia denies that the CTR establishes a "limit for zinc" applicable to stormwater discharges at the Leonis Facility.  Arcadia admits that the stormwater sample referenced in Paragraph 182 contained zinc concentrations exceeding the CTR's numeric criterion for zinc but denies that instantaneous concentrations should be compared to CTR numeric criteria and that the CTR numeric criterion for zinc is relevant under all receiving water conditions.  Arcadia also denies any implication that exceedance of the CTR's numeric criterion for zinc per se demonstrates a violation of the General Permit or CWA or that the sample referenced in Paragraph 182 demonstrates a violation of the General Permit or CWA.

183.    Arcadia denies that the CTR establishes a "limit for zinc" applicable to stormwater discharges at the Leonis Facility.  Arcadia admits that the stormwater sample referenced in Paragraph 183 contained zinc concentrations exceeding the CTR's numeric criterion for zinc but denies that instantaneous concentrations should be compared to CTR numeric criteria and that the CTR numeric criterion for zinc is relevant under all receiving water conditions.  Arcadia also denies any

implication that exceedance of the CTR's numeric criterion for zinc per se demonstrates a violation of the General Permit or CWA or that the samples referenced in Paragraph 183 demonstrates a violation of the General Permit or CWA.

184.   Arcadia lacks sufficient information to admit or deny the allegations in Paragraph 184 regarding the basis of LA Waterkeeper's allegations and therefore denies those allegations.

185.   Arcadia denies that the CTR establishes "limits."  Arcadia also denies that, as a general principle, stormwater discharges to an impaired receiving water containing pollutant concentrations exceeding the CTR numeric criteria per se contribute to exceedances of applicable water quality standards for the impairing pollutants.  To the extent Paragraph 185 contains factual allegations directed at Arcadia, Arcadia denies those allegations.

186.   Arcadia denies that the CTR establishes "limits."  Arcadia admits that, in certain instances, stormwater discharges from the Washington Facility have had zinc concentrations exceeding the numeric criterion established in the CTR, but denies that instantaneous concentrations should be compared to CTR numeric criteria and that the CTR numeric criterion for zinc is relevant under all receiving water conditions.  Arcadia also denies any implication that exceedance of the CTR's numeric criterion for zinc per se demonstrates a violation of the General Permit or

CWA and denies that stormwater discharges from the Washington Facility generally exceed the CTR criterion. Arcadia further denies that zinc discharges from the Washington Facility exceeding the CTR numeric criterion for zinc have violated the General Permit or CWA.

187. Arcadia denies that the CTR establishes "limits." Arcadia admits that, in certain instances, stormwater discharges from the Leonis Facility have had zinc concentrations exceeding the numeric criterion established in the CTR, but denies that instantaneous concentrations should be compared to CTR numeric criteria and that the CTR numeric criterion for zinc is relevant under all receiving water conditions. Arcadia also denies any implication that exceedance of the CTR's numeric criterion for zinc per se demonstrates a violation of the General Permit or CWA and denies that stormwater discharges from the Leonis Facility generally exceed the CTR criterion. Arcadia further denies that zinc discharges from the Leonis Facility exceeding the CTR numeric criterion for zinc have violated the General Permit or CWA.

188. Arcadia denies the allegations in Paragraph 188.

189. Arcadia denies the allegations in Paragraph 189.

190. Paragraph 190 alleges legal conclusions to which no response is required. To the extent a response is required, Arcadia denies the allegations in Paragraph 190. Arcadia further denies any implication that stormwater discharges

from its Facilities have per se contributed to exceedances of the numeric criteria established by the CTR.

191. Paragraph 191 alleges legal conclusions to which no response is required. To the extent a response is required, Arcadia denies the allegations in Paragraph 191.

192. Arcadia admits that the stormwater samples referenced in Paragraph 192 contained zinc concentrations exceeding the NEL for zinc, but denies that any zinc discharges from the Vernon Ave Facility exceeding the NEL for zinc have violated the General Permit or CWA. Arcadia denies any remaining allegations in Paragraph 192.

193. Arcadia admits that the stormwater samples referenced in Paragraph 193 contained zinc concentrations exceeding the NEL for zinc, but denies that any zinc discharges from the Vernon Ave Facility exceeding the NEL for zinc have violated the General Permit or CWA. Arcadia denies any remaining allegations in Paragraph 193.

194. Arcadia admits that the stormwater samples referenced in Paragraph 194 contained zinc concentrations exceeding the NEL for zinc, but denies that any zinc discharges from the Vernon Ave Facility exceeding the NEL for zinc have violated the General Permit or CWA. Arcadia denies any remaining allegations in Paragraph 194.

195.    Arcadia admits that the stormwater samples referenced in Paragraph 195 contained zinc concentrations exceeding the NEL for zinc, but denies that any zinc discharges from the Vernon Ave Facility exceeding the NEL for zinc have violated the General Permit or CWA.  Arcadia denies any remaining allegations in Paragraph 195.

196.    Arcadia admits that the stormwater samples referenced in Paragraph 196 contained zinc concentrations exceeding the NEL for zinc, but denies that any zinc discharges from the Leonis Facility exceeding the NEL for zinc have violated the General Permit or CWA.  Arcadia denies any remaining allegations in Paragraph 196.

197.    Arcadia admits that the stormwater samples referenced in Paragraph 197 contained zinc concentrations exceeding the NEL for zinc, but denies that any zinc discharges from the Leonis Facility exceeding the NEL for zinc have violated the General Permit or CWA.  Arcadia denies any remaining allegations in Paragraph 197.

198.    Arcadia admits that the stormwater samples referenced in Paragraph 198 contained zinc concentrations exceeding the NEL for zinc, but denies that any zinc discharges from the Leonis Facility exceeding the NEL for zinc have violated the General Permit or CWA.  Arcadia denies any remaining allegations in Paragraph 198.

199.  Arcadia admits that the stormwater samples referenced in Paragraph 199 contained zinc concentrations exceeding the NEL for zinc, but denies that any zinc discharges from the Washington Facility exceeding the NEL for zinc have violated the General Permit or CWA.  Arcadia denies any remaining allegations in Paragraph 199.

200.  Arcadia admits that the stormwater samples referenced in Paragraph 200 contained zinc concentrations exceeding the NEL for zinc, but denies that any zinc discharges from the Washington Facility exceeding the NEL for zinc have violated the General Permit or CWA.  Arcadia denies any remaining allegations in Paragraph 200.

201.  Arcadia admits that the stormwater samples referenced in Paragraph 201 contained zinc concentrations exceeding the NEL for zinc, but denies that any zinc discharges from the Washington Facility exceeding the NEL for zinc have violated the General Permit or CWA.  Arcadia denies any remaining allegations in Paragraph 201.

202.  Arcadia admits that the stormwater samples referenced in Paragraph 202 contained zinc concentrations exceeding the NEL for zinc, but denies that any zinc discharges from the Washington Facility exceeding the NEL for zinc have violated the General Permit or CWA.  Arcadia denies any remaining allegations in Paragraph 202.

203.   Arcadia admits that the stormwater samples referenced in Paragraph 203 contained zinc concentrations exceeding the NEL for zinc, but denies that any zinc discharges from the Washington Facility exceeding the NEL for zinc have violated the General Permit or CWA.  Arcadia denies any remaining allegations in Paragraph 203.

204.   Arcadia admits that the stormwater samples referenced in Paragraph 204 contained zinc concentrations exceeding the NEL for zinc, but denies that any zinc discharges from the Washington Facility exceeding the NEL for zinc have violated the General Permit or CWA.  Arcadia denies any remaining allegations in Paragraph 204.

205.   Arcadia admits that the stormwater samples referenced in Paragraph 205 contained zinc concentrations exceeding the NEL for zinc, but denies that any zinc discharges from the Washington Facility exceeding the NEL for zinc have violated the General Permit or CWA.  Arcadia denies any remaining allegations in Paragraph 205.

206.   Arcadia admits that the stormwater samples referenced in Paragraph 206 contained zinc concentrations exceeding the NEL for zinc, but denies that any zinc discharges from the Washington Facility exceeding the NEL for zinc have violated the General Permit or CWA.  Arcadia denies any remaining allegations in Paragraph 206.

207.   Arcadia admits that the stormwater samples referenced in Paragraph 207 contained zinc concentrations exceeding the NEL for zinc, but denies that any zinc discharges from the Washington Facility exceeding the NEL for zinc have violated the General Permit or CWA.  Arcadia denies any remaining allegations in Paragraph 207.

208.   Arcadia admits that the stormwater samples referenced in Paragraph 208 contained zinc concentrations exceeding the NEL for zinc, but denies that any zinc discharges from the Washington Facility exceeding the NEL for zinc have violated the General Permit or CWA.  Arcadia denies any remaining allegations in Paragraph 208.

209.   Arcadia lacks sufficient information to admit or deny the allegations in Paragraph 209 regarding the basis of LA Waterkeeper's allegations and therefore denies those allegations.

210.   Arcadia denies the allegations in Paragraph 210.

211.   Arcadia denies the allegations in Paragraph 211.

212.   Arcadia denies the allegations in Paragraph 212.

213.   Paragraph 213 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 213.

214.   Paragraph 214 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 214.

215.   Paragraph 215 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 215.

216.   Arcadia denies the allegations in Paragraph 216.

217.   Arcadia denies the allegations in Paragraph 217.

218.   Arcadia denies the allegations in Paragraph 218.

219.   Arcadia denies the allegations in Paragraph 219.

220.   Arcadia denies the allegations in Paragraph 220.

221.   Arcadia denies the allegations in Paragraph 221.

222.   Arcadia admits that, in certain instances, it has failed to conduct sampling and analysis for the required number of Qualified Storm Events for certain of the Facilities for certain reporting years.  Arcadia also admits that, in certain instances, it has failed to analyze collected samples for certain pollutants required to be analyzed but denies that it has failed to analyze for all required pollutants at each of the Facilities.

///

///

## VI.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

223.    Arcadia    incorporates    its    responses    to    the    allegations    in Paragraphs 1-222 of the Complaint.

224.    Arcadia denies that it generally has, since July 1, 2020, discharged stormwater from the Vernon Ave Facility containing zinc concentrations that exceed the zinc NEL applicable under the General Permit.  Arcadia admits that it has,  in certain   instances,   sampled   and   reported   zinc   concentrations   in   stormwater discharges from the Vernon Ave Facility that indicated an exceedance of the zinc NEL as defined in § V.C.1 of the General Permit.

225.    Arcadia denies that it generally has, since July 1, 2020, discharged stormwater from the Leonis Facility containing zinc concentrations that exceed the zinc NEL applicable under the General Permit.  Arcadia admits that it has, in certain instances, sampled and reported zinc concentrations in stormwater discharges from the Leonis Facility that indicated an exceedance of the zinc NEL as defined in § V.C.1 of the General Permit.

226.    Arcadia denies that it generally has, since July 1, 2020, discharged stormwater from the Washington Facility containing zinc concentrations that exceed the zinc NEL applicable under the General Permit.  Arcadia admits that it has, in certain   instances,   sampled   and   reported   zinc   concentrations   in   stormwater

1    discharges from the Washington Facility that indicated an exceedance of the zinc

2    NEL as defined in § V.C.1 of the General Permit.

3        227.    Arcadia denies the allegations in Paragraph 227.

4        228.    Arcadia denies the allegations in Paragraph 228.

5        229.    Paragraph 229 alleges legal conclusions to which no response is

6    required.  To the extent a response is required, Arcadia denies the allegations in

7    Paragraph 229.

8        230.    Paragraph 230 alleges legal conclusions to which no response is

9    required.  To the extent a response is required, Arcadia denies the allegations in

10   Paragraph 230.

11       231.    Paragraph 231 alleges legal conclusions to which no response is

12   required.  To the extent a response is required, Arcadia denies the allegations in

13   Paragraph 231.

14       232.    Paragraph 232 alleges legal conclusions to which no response is

15   required.  To the extent a response is required, Arcadia denies the allegations in

16   Paragraph 232.

17       233.    Paragraph 233 alleges legal conclusions to which no response is

18   required.  To the extent a response is required, Arcadia denies the allegations in

19   Paragraph 233.  Arcadia further denies any implication that it should be liable for

20   any significant civil penalties for any of LA Waterkeeper's alleged violations.

234.   Arcadia admits that section 505(a) of the CWA authorizes actions for injunctive relief but denies that LA Waterkeeper is entitled to injunctive relief. Arcadia denies the remaining allegations in Paragraph 234.

235.   Arcadia admits that an actual controversy exists between the parties, but denies that LA Waterkeeper is necessarily entitled to declaratory relief.

### SECOND CLAIM FOR RELIEF

236.   Arcadia incorporates its responses to the allegations in Paragraphs 1-235 of the Complaint.

237.   Arcadia denies the allegations in Paragraph 237.

238.   Arcadia denies the allegations in Paragraph 238.

239.   Arcadia denies the allegations in Paragraph 239.

240.   Arcadia denies the allegations in Paragraph 240.

241.   Arcadia denies the allegations in Paragraph 241.

242.   Paragraph 242 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 242.

243.   Paragraph 243 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 243.

244.   Paragraph 230 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 230.  Arcadia further denies any implication that it should be liable for any significant civil penalties for any of LA Waterkeeper's alleged violations.

245.   Paragraph 245 alleges legal conclusions to which no response is required.  Arcadia denies that LA Waterkeeper is entitled to injunctive relief. Arcadia denies the remaining allegations in Paragraph 245.

246.   Arcadia admits that an actual controversy exists between the parties, but denies that LA Waterkeeper is necessarily entitled to declaratory relief.

### THIRD CLAIM FOR RELIEF

247.  Arcadia incorporates its responses to the allegations in Paragraphs 1-246 of the Complaint.

248.   Arcadia denies the allegations in Paragraph 248.

249.   Arcadia denies the allegations in Paragraph 249.

250.   Arcadia denies the allegations in Paragraph 250.

251.   Paragraph 251 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 251.

252.   Arcadia denies the allegations in Paragraph 252.

253.   Paragraph 253 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 253.  Arcadia further denies any implication that it should be liable for any significant civil penalties for any of LA Waterkeeper's alleged violations.

254.   Paragraph 254 alleges legal conclusions to which no response is required.  Arcadia denies that LA Waterkeeper is entitled to injunctive relief. Arcadia denies the remaining allegations in Paragraph 254.

255.   Arcadia admits that an actual controversy exists between the parties, but denies that LA Waterkeeper is necessarily entitled to declaratory relief.

## **FOURTH CLAIM FOR RELIEF**

256.   Arcadia incorporates its responses to the allegations in Paragraphs 1-255 of the Complaint.

257.   Arcadia denies the allegations in Paragraph 257.

258.   Arcadia denies the allegations in Paragraph 258.

259.   Paragraph 259 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the legal conclusions in Paragraph 259.  Arcadia further denies the implication that it has failed to develop and implement BMPs at the Facilities that achieve the pollutant discharge reductions attainable via BAT or BCT and denies any remaining allegations in Paragraph 259.

260.   Arcadia denies the allegations in Paragraph 260.

261.    Paragraph 261 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 261.

262.    Arcadia denies the allegations in Paragraph 262.

263.    Paragraph 263 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 263.  Arcadia further denies any implication that it should be liable for any significant civil penalties for any of LA Waterkeeper's alleged violations.

264.    Paragraph 254 alleges legal conclusions to which no response is required.  Arcadia denies that LA Waterkeeper is entitled to injunctive relief. Arcadia denies the remaining allegations in Paragraph 264.

265.    Arcadia admits that an actual controversy exists between the parties but denies that LA Waterkeeper is necessarily entitled to declaratory relief.

## FIFTH CLAIM FOR RELIEF

266.    Arcadia    incorporates    its    responses    to    the    allegations    in Paragraphs 1-265 of the Complaint.

267.    Paragraph 267 fails to define "legally adequate monitoring and reporting program," and therefore Arcadia denies the allegations in Paragraph 267 as vague and ambiguous.

268.    Arcadia denies the allegations in Paragraph 268.

269.   Paragraph 269 alleges legal conclusions to which no response is required.  To the extent a response is required, Arcadia denies the allegations in Paragraph 269.  Arcadia further denies any implication that it should be liable for any significant civil penalties for any of LA Waterkeeper's alleged violations.

270.   Paragraph 254 alleges legal conclusions to which no response is required.  Arcadia denies that LA Waterkeeper is entitled to injunctive relief. Arcadia denies the remaining allegations in Paragraph 270.

271.   Arcadia admits that an actual controversy exists between the parties, but denies that LA Waterkeeper is necessarily entitled to declaratory relief.

## VII.  **RELIEF REQUESTED**

a. – j. Arcadia denies that LA Waterkeeper is entitled to the relief requested in Paragraphs a-j.

## VIII.  **GENERAL DENIAL**

Arcadia denies any allegations in the Complaint, whether express or implied, that are not expressly admitted, denied, or qualified herein.

## IX.  **AFFIRMATIVE DEFENSES**

1.   LA Waterkeeper's claims fail to state a claim upon which relief may be granted.

2.   LA Waterkeeper's claims are barred by failure to provide sufficient notice of alleged violations as required by the Clean Water Act.

3.    LA Waterkeeper's claims are barred because there has been no discharge of a pollutant from a point source to navigable waters as required to establish jurisdiction under the Clean Water Act.

4.    LA Waterkeeper lacks standing to initiate or pursue the claims asserted in the Complaint.

5.    LA Waterkeeper's claims are moot.

6.    LA Waterkeeper's claims are barred under the doctrine of res judicata.

7.    LA Waterkeeper's claims are barred because no ongoing violation of the Clean Water Act exists.

8.    LA Waterkeeper's claims are barred by one or more statutory or regulatory exemptions to the Clean Water Act.

9.    LA Waterkeeper's claims fail because Arcadia's compliance with the General Permit shields it from lability under the Clean Water Act.

10.    All conduct and activity of Arcadia alleged in the Complaint conformed to or exceeded the requirements of all statutes, regulations, other enforceable standards and/or industry standards applicable at the time of such conduct or activity.

11.    LA Waterkeeper's claims are barred by the statute of limitations.

12.    LA Waterkeeper is liable for Arcadia's costs and attorneys' fees under section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d).

Arcadia reserves the right to assert additional defenses to LA Waterkeeper's claims as further investigation and discovery warrant.

## X.  **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Arcadia demands trial by jury on the issue of liability for civil penalties under the Clean Water Act, *see Tull v. United States*, 481 U.S. 412 (1987), and on all other issues so triable.

Respectfully submitted this 23rd day of September, 2024.

**EDGCOMB LAW GROUP, LLP**

By:  /s/Tiffany R. Hedgpeth
Tiffany R. Hedgpeth


*Attorneys for Defendant*
*Arcadia Products, LLC*