# EXHIBIT 2

William Carlon (Bar No. 305739)
Email: william@carlonlaw.com
LAW OFFICE OF WILLIAM CARLON
437 Post Street
Napa, CA 94559
Phone: (530) 514-4115

Barak Kamelgard (Bar No. 298822)
Email: barak@lawaterkeeper.org
Benjamin Harris (Bar No. 313193)
Email: ben@lawaterkeeper.org
LOS ANGELES WATERKEEPER
360 E 2nd Street, Suite 250
Los Angeles, CA 90012
Phone: (310) 394-6162

Attorneys for Plaintiff
LOS ANGELES WATERKEEPER

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association,<br><br>          Plaintiff,<br><br>     v.<br><br>ARCADIA PRODUCTS, LLC, a Colorado limited liability company,<br><br>          Defendant. | Case No.: 2:24-cv-03445-GW-SSC<br><br>**[PROPOSED] CONSENT DECREE** |

# CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS,** Defendant Arcadia Products, LLC[1] ("Defendant") owns and operates three (3) facilities (each individually, a "Facility" and collectively, the "Facilities") in Vernon, California 90058, located at: (1) 2301 E. Vernon Avenue under Waste Discharger Identification ("WDID") number 4 19I021228 ("Vernon Ave Facility"), (2) 2665 Leonis Blvd under WDID number 4 19I027737 ("Leonis Facility"), and (3) 3225 E Washington Blvd under WDID number 4 19I009927 ("Washington Facility");

**WHEREAS,** the Vernon Ave Facility's industrial activities consist of the design and fabrication of architectural metal products, and is categorized under Standard Industrial Classification ("SIC") Code 3499 ("Fabricated Metal Products, Not Elsewhere Classified");

**WHEREAS,** the Leonis Facility's industrial activities consist of the design and fabrication of window and door metal products, and is categorized under SIC Code 3442 ("Metal Doors, Sash, Frames, Molding, and Trim Manufacturing");

**WHEREAS,** the Washington Facility's industrial activities consist of the design and fabrication of architectural metal products, and is categorized under SIC Codes 3471 ("Electroplating, Plating, Polishing, Anodizing and Coloring") and 3499 ("Fabricated Metal Products, Not Elsewhere Classified");

**WHEREAS,** storm water discharges associated with industrial activity at the

---

[1] Arcadia Products, LLC also uses the name Arcadia, Inc. while doing business.

Facilities are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facilities ("General Permit" or "Permit")[2], and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendant's operations at the Facilities result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan and a storm water monitoring implementation plan, (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices, which must be detailed in and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards, and (4) implement a monitoring and reporting program, including the MIP, designed to assess compliance with the Permit;

**WHEREAS**, on February 21, 2024, Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Defendant, its registered agent, the Administrator of

---

[2] Any references to the "General Permit" or "Permit" herein shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director Los Angeles Regional Water Quality Control Board ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit;

**WHEREAS**, on April 26, 2024, LA Waterkeeper filed a complaint against Defendant in the Central District of California ("Court"), Civil Case No. 2:24-cv-03445-GW-SSC ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains and surface waters, including the Los Angeles River, and ultimately the Pacific Ocean (collectively, "Receiving Waters");

**WHEREAS**, Plaintiff and Defendant (collectively, "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.     The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.     Venue is appropriate in the Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facilities at which the alleged violations are taking place are located within this District.

3.     The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.     LA Waterkeeper has standing to bring this action.

5.    The Court shall retain jurisdiction over this action for the Term for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, and adjudicating any disputes among the Parties that may arise under the provisions of this Consent Decree or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised prior to the Termination of Obligations for each Facility (as defined below). The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

6.    <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree, any provision thereof, nor any payment pursuant to the Consent Decree shall constitute or be construed as an admission, finding, adjudication, evidence or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

7.    <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

## I.    OBJECTIVES

8.    It is the express purpose of the Settling Parties through this Consent Decree to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint.

9.    In light of these objectives and as set forth fully below, the Settling Parties agree to comply with the provisions of this Consent Decree.

## II.    AGENCY REVIEW AND DEFINITIONS

### A.    AGENCY REVIEW OF CONSENT DECREE

10.    <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States EPA (the "Federal Agencies") for

4

agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, or if the Court should decline to approve this Consent Decree in the form presented, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies or by the Court. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments or by the Court, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

11.    <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

12.    <u>Entry of Consent Decree</u>. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

## B.    DEFINITIONS AND ACRONYMS

13.    Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in the Consent Decree, whether or not capitalized, the following acronyms and definitions apply:

a.    "BAT" means the Best Available Technology Economically Achievable.

b.    "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

c.   "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

d.   "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

e.   "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f.   "Design Storm" means the volume and flow rate of runoff produced from a design storm as defined by General Permit Section X.H.6, or as otherwise described herein and established in and by the respective Feasibility Studies prepared for each of the Facilities, as applicable.

g.   "Discharge Point" means each discharge location designated in the then-current SWPPP for the applicable Facility.

h.   "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

i.   "Entry Date" means the day this Consent Decree is entered by the Court.

j.   "Forecasted Rain Event" means a forecasted rain event with a fifty percent (50%) or greater chance of precipitation of 0.1 inches or more at least 48 hours in advance of the expected precipitation with minimum antecedent dry period of 72 hours prior to the beginning of the rain event as determined by the National Oceanic

[PROPOSED] CONSENT DECREE

and Atmospheric Administration (http://forecast.weather.gov/) for "90058, Vernon, CA, USA"[3].

k.   "MIP" means a Monitoring Implementation Plan.

l.   "Obligation Period" means the period between the Effective Date and the Termination of Obligations for a Facility.

m.   "PPT" means Pollution Prevention Team.

n.   "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

o.   "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

p.   "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

q.   "Scheduled Facility Operating Hours" shall have the definition set forth in Attachment C of the General Permit.

r.   "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

s.   "SWPPP" means a Storm Water Pollution Prevention Plan.

t.   "Term" means the period between the Entry Date and the "Termination Date."

u.   "Termination Date" means:

i.   Provided that there is no then-pending proceeding or process to enforce the Consent Decree initiated prior to such date and that all of Defendant's payment obligations required by the Consent Decree are completed prior to such

[3] Available at https://forecast.weather.gov/MapClick.php?lat=34.002469&lon=-118.213089.

7

[PROPOSED] CONSENT DECREE

1    date, the earlier of (A) June 30 following four (4) years

2    from the Effective Date; and (B) June 30 following the

3    Termination of Obligations as to all three Facilities.

4        ii.    Otherwise, the Termination Date shall be the later of (A)

5            seven (7) days from the conclusion of any proceeding or

6            process to enforce the Consent Decree initiated prior to

7            June 30 following four (4) years from the Effective Date; or

8            (B) seven (7) days from Defendant's completion of all

9            payments required by this Consent Decree.

10    v.    "Termination of Obligations," as to each Facility, shall mean the

11        date upon which the affirmative obligations, except for any

12        payment and data retention obligations, for such Facility shall

13        cease, as follows:

14        i.    For the Vernon Ave and Washington Facilities: June 30

15            following two (2) years after any required, per below,

16            Advanced Treatment System (as defined below) is fully

17            installed, tested, and operational at the applicable Facility.

18        ii.    For the Leonis Facility: The earlier of (A) June 30

19            following two (2) years after any required, per below,

20            Advanced Treatment System (as defined below) is fully

21            installed, tested, and operational at the applicable Facility;

22            or (B) June 30 following four (4) or more consecutive QSEs

23            that are sampled and for which laboratory results for such

24            samples demonstrate no Exceedances of Table 1 below.

25    w.    "Wet Season" means the period beginning October 1st of any

26        given calendar year and ending June 30th of the following

27        calendar year.

28

[PROPOSED] CONSENT DECREE

## III.    COMMITMENTS OF THE SETTLING PARTIES

### A.    STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

14.    <u>Current and Additional Best Management Practices.</u> At all times, Defendant shall implement BMPs identified in each Facility's respective SWPPP and BMPs described herein, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit.

15.    <u>Rain Gauge/Sensor</u>. Defendant shall install and maintain an electronic rain gauge or sensor at the Vernon Ave Facility within thirty (30) days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendant shall collect data using the Vernon Ave Facility gauge/sensor for all precipitation events subject to this Consent Decree and the General Permit to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and precipitation timing for purposes of this Consent Decree, except in the event of equipment malfunctions not caused by Defendant's misconduct (such as tampering) or negligence.

16.    <u>Structural and Non-Structural BMPs for the Facilities</u>. Defendant shall develop and implement the following BMPs at the Facilities:

        a.    As soon as possible but no later than ninety (90) days after the Effective Date, patch, pave, or otherwise resurface areas of degraded pavement or asphalt at the Vernon Ave Facility in the areas shown on Attachment 1;

        b.    As soon as possible but no later than sixty (60) days after the Effective Date, install and/or repair permanent concrete berms, curbs, or similarly effective physical barriers that (i) prevent storm water discharges from any point other than Discharge Points, such

as along the perimeter of the Washington Facility, and (ii) that no storm water discharges bypass the applicable BMPs, including without limitation the fenceline of the metal storage area in Drainage Area 3 at the Washington Facility where stormwater discharges bypass the passive filtration system at Discharge Point 3, unless such areas are added to the SWPPP as Discharge Points, and are included under Representative Sampling Reduction in the updated SWPPP;

c.   As soon as possible but no later than forty-five (45) days after the Effective Date, implement a sweeping program using currently owned sweepers on all paved areas at each Facility at least once per week and shall use reasonable efforts to also do so within twenty-four (24) hours prior to a Forecasted Rain Event, provided such twenty-four hour period occurs during Scheduled Facility Operating Hours, and employ hand sweeping and/or vacuuming on the same schedule in areas a mechanical sweeper cannot access;

d.   As soon as possible but no later than forty-five (45) days after the Effective Date, to the extent feasible, employ and secure new wattles/filters/filtration socks (metal-targeting media) at the Leonis and Washington Facilities' Discharge Points and trench drains (including without limitation the trench drain in front of the P&D Building at the Washington Facility which flows to Discharge Point 4), and employ and secure new inlet filters in each inlet at the Vernon Ave Facility currently equipped with filters, to remove sediments and metals in storm water discharged from the Facilities, and configure such wattles/filters/socks to achieve maximum contact time with storm water prior to

discharge, *e.g.,* in multiple layers and/or overlapping formations. Until any required Advanced Treatment System is installed, tested and operational, Defendant shall, thereafter, employ and secure new wattles/filters/socks in the same manner annually prior to the start of the Wet Season, no later than September 15th;

e.    During each Wet Season until any required Advanced Treatment System is installed, tested and operational, and thereafter at Defendant's election, as necessary, replace any wattles/filters/socks at each Facility when degraded or ineffective, including without limitation when there are rips, tears or other visual damage, and/or sampling data demonstrating the wattles/filters/socks are not sufficiently reducing pollutant concentrations relative to previous sampling data;

f.    During each Wet Season until any required Advanced Treatment System is installed, tested and operational, Defendant shall use reasonable efforts at each Facility to, within twenty-four (24) hours prior to a Forecasted Rain Event, provided such twenty-four hour period occurs during Scheduled Facility Operating Hours, inspect all wattles/filters/socks deployed;

g.    During each Wet Season until any required Advanced Treatment System is installed, tested and operational, Defendant shall use reasonable efforts at each Facility to, within twenty-four (24) hours prior to a Forecasted Rain Event, provided such twenty-four hour period occurs during Scheduled Facility Operating Hours, cover to the extent feasible unfinished aluminum products and scrap bins, and trash cans with tarps, lids, or other coverings sufficient to prevent exposure to rainfall, including without limitation those stored outside and where roof protection is

11

inadequate, or otherwise move them into a covered structure adequate to prevent exposure to rainfall;

h.    Beginning no later than sixty (60) days after the Effective Date, visually inspect all outdoor drains regularly to ensure they are free of clogs and operating as intended;

i.    As soon as possible but no later than sixty (60) days after the Effective Date, remove, and prevent the outdoor, uncovered storage of, all abandoned vehicles, equipment, and paint materials from the entire property;

j.    As soon as possible but no later than forty-five (45) days of the Effective Date, institute a vehicle maintenance program that:

   i.    Endeavors to conduct no maintenance activities outdoors not under cover during a rain event unless such maintenance is required for safe operation of the Facilities, *e.g.*, the forklift breaks down in a location that prevents ingress/egress;

   ii.   Ensures maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

   iii.  Ensures that when maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground.

k.    Within seven (7) days of each of the BMPs in subparagraphs a, b, d, and i above being initially implemented, Defendant shall confirm to LA Waterkeeper in writing, with representative photographs (as applicable), that such BMP has been implemented as set forth above.

17.    <u>Advanced Treatment Systems</u>.

a.  <u>Feasibility Studies</u>. Defendant shall prepare and submit a written report to Plaintiff providing a full evaluation of the feasibility and necessity of installation of one or more, as needed to comply with the General Permit, media filtration-based stormwater treatment systems ("Advanced Treatment Systems"), including storm water collection and conveyance, from all the industrial storm water Discharge Points at each of the Facilities (the "Feasibility Study"), and including a schedule for full implementation, which schedule shall take into account operational and Facility logistical constraints. The Advanced Treatment Systems shall be designed to meet Table 1 Levels for aluminum, iron, zinc, and nitrate plus nitrite, and sized to meet the Design Storm standard.

i.  <u>Vernon Ave and Washington Facilities</u>. Defendant shall submit the Feasibility Study as to the Vernon Ave and Washington Facilities as soon as possible but not later than ninety (90) days of the Entry Date.

ii.  <u>Leonis Facility</u>. Defendant shall submit a Feasibility Study as to the Leonis Facility if, after the Entry Date, storm water samples demonstrate an Exceedance of Table 1 for aluminum, iron, zinc, or nitrate plus nitrite in any Reporting Year. Defendant shall submit the Feasibility Study for the Leonis Facility within ninety (90) days of the receipt of the laboratory report demonstrating the referenced exceedance(s). Additionally, if a Feasibility Study is ever required for the Leonis Facility, Defendant shall pay Plaintiff Four Thousand Dollars ($4,000.00) at the same time that the Feasibility Study is submitted and shall be made to "Los Angeles Waterkeeper" via certified mail,

return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E. 2nd Street, Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree.

b.    LA Waterkeeper shall provide Defendants with a written response ("Recommendations") if any, to the applicable Feasibility Study within thirty (30) days of LA Waterkeeper's receipt of the complete Feasibility Study. Within thirty (30) days of Defendant's receipt of the Recommendations, if any, Defendant shall incorporate LA Waterkeeper's Recommendations into the Feasibility Study or, alternatively, provide a separate written rationale explaining why any of the Recommendations were not accepted or incorporated, and provide a Final Feasibility Study to LA Waterkeeper. Any disputes as to the adequacy of the Feasibility Study shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

c.    Installation. Subject to events of Force Majeure pursuant to Paragraph 55 below, if the applicable Feasibility Study concludes that, installation of the Advanced Treatment Systems is necessary and reasonably feasible at the applicable Facility and that any necessary approvals or permissions can be obtained, Defendant shall install the Advanced Treatment Systems pursuant to the applicable Feasibility Study as soon as reasonably possible on the schedule identified in the Feasibility Study.  To the extent more than one Advanced Treatment System is required to be installed pursuant to this Consent Decree, the Parties anticipate and agree

14

that installation of each system may be staggered so that Defendant will only be required to install one Advanced Treatment System at a time, which shall be identified in the schedule in the application Feasibility Study.

d.  <u>Status Reports</u>. Defendant shall provide written quarterly status reports to Plaintiff ("Status Reports") on the feasibility, engineering, designing, permitting, construction, testing and operation of any Advanced Treatment Systems beginning in the quarter following the Feasibility Study being final and continuing until the applicable Advanced Treatment System is fully constructed, tested and operational.

**B.  SAMPLING AT THE FACILITIES**

18.    Defendant shall develop a monitoring program consistent with the General Permit. During the Obligation Period for the relevant Facility, Defendant shall collect samples of storm water discharge from each Discharge Point at each Facility[4] from a minimum of two (2) QSEs between January 1 to June 30 and two (2) QSEs between July 1 and December 31 (or if fewer QSEs occur, then that lesser number) each Reporting Year as required by the General Permit. Defendant shall use best efforts to sample the first two (2) QSEs in each half of the Reporting Year. Such sampling shall take place as soon as reasonably possible, during Scheduled Facility Operating Hours, within the four (4) hour period required by the General Permit § XI.B.5. If Defendant would have been required to collect samples during a rain event pursuant to this Consent Decree had such rain event produced a sampleable discharge, but Defendant did not collect samples because such rain event did not produce a sampleable discharge, then Defendant shall use best efforts during

---

[4] At the Vernon Ave Facility, Defendant shall only sample at the manhole cover in front of the main driveway near Vernon Avenue, unless it is co-mingled with discharges from the Municipal Separate Storm Sewer System, in which case Defendant and Plaintiff shall sample from its three (3) prior sampling locations within the Facility.

Scheduled Facility Operating Hours to document the inability to sample by taking representative photographs during the rain event of each Discharge Point from which no discharge occurred. Defendant shall submit such photographs to LA Waterkeeper by email, along with rain gauge/sensor data for the date of such rain event, within five (5) days of a written request for such records by LA Waterkeeper.

19.    Sampling Parameters. All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Defendant shall immediately notify LA Waterkeeper in writing of its intent to conduct sampling for any additional parameters and the Parties shall meet and confer regarding the applicable Table 1 level for such purposes within ten (10) days of such notification.

20.    Laboratory and Holding Time. Except for pH samples, Defendant shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using either pH paper or a portable instrument that is calibrated and used according to the manufacturer's instructions.

21.    Detection Limit. Defendant shall request that the laboratory use analytical methods adequate to detect the individual pollutants at or below the values specified in the General Permit and Table 1 below.

22.    Reporting. Defendant shall provide complete laboratory results of all samples collected at the Facilities to SMARTS in accordance with the General Permit, and shall provide copies to LA Waterkeeper, or shall provide notice to LA Waterkeeper via electronic mail that said documents have been uploaded to SMARTS, within ten business (10) days of receiving the laboratory report with the results.

C.    REDUCTION OF POLLUTANTS IN DISCHARGES

23.    Table 1 Numeric Levels. Defendant shall develop and implement the BMPs specified herein in an effort to reduce pollutant concentrations to levels below those in Table 1.

**TABLE 1**

| Parameter | Numeric Level | Source of Level |
|---|---|---|
| Aluminum | 0.75 mg/L (annual) | NAL |
| Iron | 1.0 mg/L (annual) | NAL |
| N+N | 0.68 mg/L (annual) | NAL |
| O&G | 15 mg/L (annual); 25 mg/L (instantaneous) | NAL |
| pH | < 6.0 or > 9.0 S.U. (instantaneous) | NAL |
| TSS | 100 mg/L (annual); 400 mg/L (instantaneous) | NAL |
| Zinc | 0.159 mg/L (instantaneous) | LA River NEL |

24.    Table 1 Exceedances. An "Exceedance" of Table 1 is defined as follows: an exceedance occurs for annual Table 1 values when the average of all the analytical results from samples taken at a Facility for any single parameter within a given Reporting Year exceeds the applicable annual value in Table 1; or for instantaneous Table 1 values two (2) or more analytical results from samples taken at a Facility (for NALs) or at a given Discharge Point (for NELs) for any single parameter within a Reporting Year exceed the applicable instantaneous value in Table 1 or are outside of the instantaneous range in Table 1 (for pH).

25.    Action Plan. After an Advanced Treatment System is fully installed, tested, and operational at a given Facility or the applicable Feasibility Study for that Facility concludes that installation of the Advanced Treatment Systems is either not necessary or reasonably feasible at the applicable Facility and/or that any necessary approvals or permissions cannot be obtained, and until the Termination of Obligations for that Facility, if (a) storm water samples demonstrate an Exceedance

[PROPOSED] CONSENT DECREE

as defined above, or (b) after an Advanced Treatment System is fully installed, tested, and operational at the applicable Facility, if ever, the Advanced Treatment System discharges untreated storm water in a rain event smaller than the Design Storm for the applicable Advanced Treatment System, Defendant shall submit to LA Waterkeeper a plan for reducing and/or eliminating the relevant discharge of pollutants for the applicable Facility, or, identifying potential non-industrial or off-site sources that may cause or contribute to the Exceedance and a plan to evaluate such source's contribution ("Action Plan"). However, an Action Plan shall not be required when the BMPs for the Exceedance for the same pollutant in the same drainage area were addressed in a previous Action Plan or SWPPP in the same Reporting Year and such BMPs were not yet implemented as of the date of the QSE sampling that led to the Exceedance.[5] The Action Plan based on an Exceedance shall be submitted to LA Waterkeeper (a) within thirty (30) days of receipt of the laboratory report demonstrating an instantaneous Exceedance, (b) within thirty (30) days of receipt of the laboratory report demonstrating an annual Exceedance would be inevitable[6] were the Facility to collect samples during four (4) QSEs in the Reporting Year, or (b) if the Facility sampled fewer than four (4) QSEs, by June 30 following the Exceedance, as applicable. Otherwise, the "Submitted Action Plan" (defined below) shall be submitted to LA Waterkeeper within thirty (30) days of the discharge for a rain event smaller than the Design Storm. If an Action Plan is simultaneously required for more than one Facility, Defendant may submit one Action Plan that addresses all applicable Facilities.

---

[5] For clarity, an Action Plan based on an Exceedance shall be required if: (i) the applicable Exceedance is demonstrated for a pollutant and/or in a drainage area not addressed in a previous Action Plan in the same Reporting Year; and/or (2) when the applicable Exceedance is demonstrated for the same pollutant in the same drainage area as in a previous Action Plan in the same Reporting Year and the BMPs in the previous Action Plan were fully implemented before the applicable QSE that led to the Exceedance was sampled

[6] E.g., An Exceedance is "inevitable" when the sum of all samples for that pollutant at that point in the Reporting Year is high enough that the Facility will exceed the annual numeric limit even if all remaining samples for the pollutant that Reporting Year are non-detects (based on no more than four QSEs).

a.    <u>Action Plan Requirements</u>. Each "Submitted Action Plan" submitted shall include at a minimum, as to any Pollutant resulting from onsite industrial activity: (1) the identification of the pollutant(s) discharged in excess of the numeric limit(s), and/or the applicable discharge for a rain event smaller than the Design Storm; (2) an assessment of the source of each pollutant exceedance, and/or the applicable discharge for a rain event smaller than the Design Storm; (3) the identification of additional appropriate BMPs that shall be implemented to achieve compliance, to the extent feasible, with the numeric limit(s), and/or Design Storm standard, as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the final Action Plan to Waterkeeper (incorporating any revisions based on Waterkeeper comments), unless a later implementation date is mutually agreed upon by the Settling Parties. Within seven (7) days of each of the BMPs set forth in the Submitted Action Plan being implemented, Defendant shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth in the Action Plan.

b.    <u>Action Plan Proposed BMPs.</u> The following BMPs should generally be evaluated for inclusion in Action Plans to attain the applicable Table 1 levels in the applicable Facility's storm water discharges:

i.    <u>Hydrologic Controls</u>. Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

ii.   <u>Sweeping</u>. The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

iii.  <u>Treatment Systems</u>. Installing additional components or systems, or otherwise improving, an Advanced Treatment System, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

iv.   <u>Evaluation of Existing BMPs</u>.  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

c.    <u>Action Plan Review</u>. LA Waterkeeper shall have thirty (30) days after receipt of Defendant's Submitted Action Plan to provide Defendant with comments. Within fourteen (14) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this

20

Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

  d.  Defendant shall revise the then-current SWPPP for the applicable Facility to reflect the changes required by the Action Plan, as set forth in Paragraph 30.b.i below.

  e.  <u>Action Plan Payments</u>. Defendant shall pay Three Thousand Dollars ($3,000.00) each time an Action Plan is submitted to LA Waterkeeper with regards to one Facility and Five Thousand Dollars ($5,000.00) each time an Action Plan is submitted to LA Waterkeeper that addresses two or more Facilities. Payments are due at the same time that the applicable Action Plan is submitted and shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E. 2nd Street, Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree.

**D.** **VISUAL OBSERVATIONS**

26. <u>Storm Water Discharge Observations</u>. During the Obligation Period for the applicable Facility, and during Scheduled Facility Operating Hours, appropriately trained staff of Defendant shall conduct visual observations during a minimum of two (2) QSEs between January 1 and June 30 and two (2) QSEs between July 1 and December 31 each Reporting Year as required by the General Permit. If there are not two QSEs during the relevant period, Defendant shall conduct visual observations on as many QSEs as occur during that relevant period. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit.

27. <u>Monthly Visual Observations</u>. During the Obligation Period for the applicable Facility, appropriately trained staff of Defendant shall conduct monthly

non-storm water visual observations of the Facilities in accordance with the General Permit and SWPPPs.

28. <u>Visual Observations Records</u>. Defendant shall maintain observation records, including representative photographs, to document compliance with Paragraphs 26 and 27. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in a proper, working condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges; and (iv) photographs of all the foregoing. Defendant shall provide LA Waterkeeper with a copy of those records within seven (7) days of receipt of a written request from LA Waterkeeper for those records.

29. <u>Employee Training Program</u>. Within sixty (60) days after the Effective Date, Defendant shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at each of the Facilities designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

    a.   <u>Materials</u>. Training materials should include, at minimum, training slides that incorporates the requirements set forth in the General Permit at I.I.63, IX.A1-3;

    b.   <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and

1       improve compliance with this Consent Decree and the General

2       Permit;

3    c.  <u>Training Frequency</u>. Training shall be provided by a QISP

4       familiar with the requirements of this Consent Decree and the

5       General Permit and shall be repeated as necessary to ensure that

6       all relevant employees are familiar with the requirements of this

7       Consent Decree, the Permit, and the Facilities' respective

8       SWPPPs. All relevant new staff shall receive this training before

9       assuming responsibilities for implementing the SWPPPs;

10   d.  <u>Sampling Training</u>. Defendant shall designate an adequate number

11      of employees necessary to collect storm water samples as required

12      by this Consent Decree, including training to ensure samples are

13      properly collected, stored, and submitted to a certified laboratory;

14   e.  <u>Visual Observation Training</u>. Defendant shall provide training on

15      how and when to properly conduct visual observations to

16      Designated Employees;

17   f.  <u>Non-Storm Water Discharge Training</u>. Defendant shall train all

18      Designated Employees at each of the Facilities on the General

19      Permit's prohibition of non-storm water discharges, so that

20      Designated Employees know what non-storm water discharges are

21      and how to detect and prevent non-storm water discharges;

22   g.  <u>Employees</u>. All Designated Employees at each of the Facilities

23      shall participate in the Training Program annually. Training shall

24      be provided to Designated Employees within thirty (30) days of

25      their hiring date; and

26   h.  <u>Records</u>. Defendant shall maintain training records to document

27      compliance with this Paragraph and shall provide LA Waterkeeper

28

1     with a copy of these records within seven (7) days after receipt of
2     a written request.

3     30.   SWPPP Revisions.

4         a.   Initial SWPPP Revisions. Within thirty (30) days after the
5         Effective Date, Defendant shall amend the SWPPP for each
6         Facility, as needed, to ensure compliance with the General Permit
7         requirements for SWPPPs, consistent with the pertinent
8         requirements in this Consent Decree, and submit the "Updated
9         Draft SWPPPs" to LA Waterkeeper for LA Waterkeeper's review
10        and comment. The "Updated Draft SWPPPs" shall contain, at a
11        minimum, the following elements:

12            i.   A revised pollutant source assessment, including all
13            elements required by section X.G of the General Permit as
14            well as assessments of the potential for the applicable
15            Facility's storm water discharges to contain pollutants for
16            which the Receiving Waters are 303(d) listed and/or have
17            Total Maximum Daily Loads;

18            ii.  A detailed narrative description and assessment of each
19            industrial activity with the potential to impact storm water
20            quality occurring at the applicable Facility as required by
21            section X.G of the General Permit;

22            iii. Descriptions of all BMPs in accordance with section X.H.4
23            of the General Permit, including without limitation BMPs
24            required by this Consent Decree;

25            iv.  A set of site maps that comply with section X.E of the
26            General Permit and provisions of this Consent Decree,
27            including accurately depicting the different drainage areas
28            and flows;

      v.    A MIP as required by sections XI and X.I of the General Permit;

      vi.    A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, e.g., visual inspection of each specific area, monitoring each specific BMP, sampling, etc.; and

      vii.    A Training Program as described above in Paragraph 29.

    b.    <u>Additional SWPPP Revisions</u>.

      i.    Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP for the applicable Facility to reflect the changes required by the Action Plan and submit the Updated Draft SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

      ii.    Within thirty (30) days after any changes in industrial activities or sources of industrial pollutants, changes to Discharge Points, or changes to sections of the given SWPPP identified as requiring a SWPPP revision (including but not limited to, changes in a Facility's contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendant shall revise the then-current SWPPP for the applicable Facility to reflect such changes and submit the Updated Draft SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

c. <u>Review of SWPPP</u>. For any SWPPP updates pursuant to Paragraphs 30.a and 30.b, LA Waterkeeper shall have thirty (30) days after receipt of Defendant's Updated Draft SWPPP for the applicable Facility to provide Defendant with comments. Within thirty (30) days after receiving LA Waterkeeper's comments and proposed changes to a given SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. Regardless of the time allocated for LA Waterkeeper review and comment, Defendant may upload the applicable SWPPP to SMARTS prior to its receipt of LA Waterkeeper's comments and proposed changes, provided that uploading to SMARTS shall not be given as a justification as to why a change requested by LA Waterkeeper is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to a given SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendant shall upload the revised SWPPP to SMARTS.

E. **COMPLIANCE MONITORING AND REPORTING**

31. LA Waterkeeper may conduct one annual site inspection ("Site Inspection") of each Facility during each Reporting Year during the Obligation Period for the applicable Facility for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding an additional Site Inspection at the applicable Facility at Plaintiff's

request. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur on weekdays (and not holidays) between 9am and 4pm, and LA Waterkeeper will provide Defendant with at least seven (7) days' notice for a Site Inspection intended to occur in dry weather and at least forty-eight hours' notice for a Site Inspection intended to occur in wet weather.  For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the applicable Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 56. LA Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection provided LA Waterkeeper first confirms no proprietary information will be photographed or recorded.

32.    <u>Document Provision</u>. During the Obligation Period for the applicable Facility, Defendant shall notify and submit documents to LA Waterkeeper as follows:

a.    Defendant shall copy LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 56, on the following documents related to stormwater quality at the Facilities after the Execution Date that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality: compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facilities after the Effective Date that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality. Alternatively, if the submission to the Regional Board or State Board is made via SMARTS, Defendant may satisfy this requirement by providing notice to LA Waterkeeper via electronic

mail that said documents have been uploaded to SMARTS within ten (10) business days of uploading said documents.

b.   Within ten (10) business days of receipt by Defendant, send to LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 56, any compliance document, inspection report, written communication and/or correspondence (except automated or non-substantive replies and confirmations), or any document related to storm water quality after the Effective Date at the Facilities received by Defendant from the Regional Board or the State Board.

33.   <u>Compliance Monitoring</u>. Defendant shall partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree during the Term by paying Five Thousand Dollars ($5,000.00) per year per Facility whose obligations have not terminated pursuant to Paragraph 13.v above as of the date of the applicable annual payment.[7] The initial annual payment shall be made within thirty (30) days of the Entry Date, with each subsequent payment payable by the applicable anniversary of the Effective Date.  In the event that, pursuant to Paragraph 30, there is an additional Site Inspection in a given year to resolve a dispute, Defendant shall reimburse LA Waterkeeper an additional Two Thousand Five Hundred Dollars ($2,500.00) during such year, within thirty (30) days after any additional Site Inspection. Payments pursuant to this Paragraph shall be made via check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E 2nd Street, Suite 250, Los Angeles, CA 90012. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

---

[7] I.e., Fifteen Thousand Dollars ($15,000) for the initial annual payment and any subsequent annual payment owed at a time when all three Facilities have active obligations, Ten Thousand Dollars ($10,000) if one of the Facilities' obligations have terminated by such time, and Five Thousand Dollars ($5,000) if two of the Facilities' obligations have terminated by such time.

[PROPOSED] CONSENT DECREE

**F.    ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST**

34.    <u>Environmentally Beneficial Project</u>. To fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in the Los Angeles River watershed, Defendant shall make a payment totaling One Hundred Thousand Dollars ($100,000.00) to Friends of Cabrillo Marine Aquarium made within thirty (30) days of the Entry Date, payable to the "Friends of Cabrillo Marine Aquarium" and sent via overnight mail to Friends of Cabrillo Marine Aquarium, c/o Caroline Brady, 3720 Stephen M. White Drive, San Pedro, CA 90731. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

35.    <u>LA Waterkeeper's Fees and Costs</u>. Defendant shall pay a total of Seventy Thousand Dollars ($70,000.00) to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within thirty (30) days of the Entry Date. The payment shall be made payable to: Law Office of William Carlon and delivered by overnight carrier to 437 Post Street Napa, California, 94559. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

36.    <u>Missed Deadlines</u>. In the event that Defendant fails to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, LA Waterkeeper shall provide written notice to Defendant of such missed deadline. Defendant shall have seven (7) days from receipt of such notice to respond to LA Waterkeeper, and, if necessary, cure such delinquency. If Defendant fails to respond, and if necessary, cure such alleged delinquency within seven (7) days of receipt of LA Waterkeeper's notice, Defendant shall pay a stipulated payment of Five Hundred Dollars ($500). Such stipulated payments shall be made by check

payable to: "Friends of Cabrillo Marine Aquarium", and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 34. Payment shall be sent via overnight mail to Friends of Cabrillo Marine Aquarium, c/o Caroline Brady, 3720 Stephen M. White Drive, San Pedro, CA 90731. Defendant agrees to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

37.    <u>Interest on Late Payments</u>. Defendant shall pay interest on any payments, fees, or costs owed pursuant to this Consent Decree that are not received by the due date. The interest shall accrue starting the next business day after the payment is due and shall be computed at a rate equal to the lower of: (i) 10% per year (0.833% per month); or (ii) the maximum rate permitted by applicable law. Interest shall continue to accrue daily on any outstanding balance until Defendant is current on all payments then due under this Consent Decree, and shall be paid at the same time that the payments, fees, or costs owed are paid to LA Waterkeeper. Interest on late payments shall be paid by check payable to: "Friends of Cabrillo Marine Aquarium", and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 34. Payment shall be sent via overnight mail to Friends of Cabrillo Marine Aquarium, c/o Caroline Brady, 3720 Stephen M. White Drive, San Pedro, CA 90731.

**IV.    DISPUTE RESOLUTION**

38.    <u>Meet and Confer</u>. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days after the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

39.    <u>Resolution</u>. If the Parties cannot resolve the dispute within thirty (30) days after the date of the meet and confer described in Paragraph 38, the Parties agree

that the dispute may be submitted for resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion, assuming a Party or the Parties believe a hearing on the motion is necessary.

40.    In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

## V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

41.    <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Entry Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised or could have been raised, known or unknown, in the 60-Day Notice Letter and/or the Complaint for any actions or omissions at the Facilities occurring up to and including the Termination Date of this Consent Decree.

42.    <u>Defendant's Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Entry Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

## VI.    MISCELLANEOUS PROVISIONS

43.    <u>Termination</u>.  This Consent Decree shall terminate on the Termination Date.

44.    <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy

and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

45.    <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the Party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

46.    <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

47.    <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

48.    <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

49.    <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

50.    <u>Diligence</u>. Defendant shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

51.    <u>Effect of Consent Decree</u>. The Settling Parties agree that compliance with this Consent Decree is not dispositive as to whether Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation

nor is non-compliance dispositive of whether or not Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

52.    <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party on this basis.

53.    <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be modified unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing before the existing deadline(s) applicable to the provision(s) proposed to be modified.

54.    <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff, in writing, within ten (10) days after any assignment.

55.    <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; supply-chain issues; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include economic hardship, inability to pay, or employee negligence. Any Party seeking to rely upon this Paragraph to excuse or postpone performance shall

have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

56.    <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| <u>If to Plaintiff</u>: | <u>If to Defendant</u>: |
|---|---|
| Los Angeles Waterkeeper | Arcadia Products, LLC |
| Barak Kamelgard | Byron Bjork |
| Benjamin Harris | 3225 E Washington Blvd |
| Erina Kwon | Vernon, CA 90058 |
| Madeleine Siegel | Email: bbjork@arcadiainc.com |
| 360 E 2nd St., Suite 250 | Phone: 323-604-5927 |
| Los Angeles, CA 90012 | |
| Email: barak@lawaterkeeper.org | |
| Email: ben@lawaterkeeper.org | |
| Email: erina@lawaterkeeper.org | |
| Email: madeleine@lawaterkeeper.org | |
| Phone: (310) 394-6162 | |

| <u>With copies to</u>: | <u>With copies to</u>: |
|---|---|
| Law Office of William Carlon | Michelle Shepston |
| William Carlon | 11800 Ridge Parkway, Suite 300 |
| 437 Post Street | Broomfield, CO 80021 |
| Napa, CA 94559 | Email: mshepston@dmcglobal.com |
| Email: william@carlonlaw.com | Phone: 303-604-3944 |
| Phone: (530) 514-4115 | |
| | Elizabeth Temkin |
| | Marta Orpiszewska |
| | Davis Graham and Stubbs LLP |
| | 1550 17th Street, Ste 500 |
| | Denver, CO 80202 |
| | Email: |
| | Elizabeth.Temkin@davisgraham.com |

34

1

2

3

4

Marta.Orpiszewska@davisgraham.com
Phone: 303-892-7222 (Temkin)
303-892-7483 (Orpiszewska)

5

6

7

8

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

9

10

11

12

13

14

15

16

17

57.    If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

18

19

20

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

21

22

23

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

24

25

26

27

28

[PROPOSED] CONSENT DECREE

1   APPROVED AS TO CONTENT

2

3

4   Dated: October 16, 2024                    By: _____
                                                   Bruce Reznik
5                                                  Executive Director
6                                                  Los Angeles Waterkeeper

7

8   Dated: _____ October 15 , 2024             By: _____
                                                   Michelle Shepston
9                                                  Vice President
10                                                 Arcadia Products, LLC

11

12  APPROVED AS TO FORM

13

14                                                 LAW OFFICE OF
                                                   WILLIAM CARLON
15

16

17  Dated: October 16, 2024                    By: _____
                                                   William Carlon
18                                                 Attorney for Plaintiff
19                                                 Los Angeles Waterkeeper

20                                                 EDGCOMB LAW GROUP, LLP
21

22

23  Dated: _____ October 15 , 2024             By: _____
                                                   Tiffany Hedgpeth
24                                                 Attorney for Defendant
25                                                 Arcadia Products, LLC

26

27

28

---

36

[PROPOSED] CONSENT DECREE

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.

Dated: _____          CENTRAL DISTRICT OF CALIFORNIA


_____
HONORABLE GEORGE H. WU
United States District Court Judge

[PROPOSED] CONSENT DECREE

# ATTACHMENT 1



LEGEND

- ● STORMWATER DISCHARGE & SAMPLING LOCATION
- ■ CATCH BASIN
- ⊠ CATCH BASIN WITH FILTER INSERT
- DRAINAGE AREA BOUNDARY
- PROPERTY BOUNDARY
- INDUSTRIAL ACTIVITY BOUNDARY
- SURFACE WATER FLOW DIRECTION
- SUBSURFACE FLOW CONVEYANCE
- SUBSURFACE FLOW CONVEYANCE (OBSTRUCTED)
- TRENCH DRAIN
- NON-INDUSTRIAL AREA
- OVERHEAD COVERAGE / BUILDING (NON-INDUSTRIAL)
- OVERHEAD COVERAGE / EXPOSURE MINIMIZATION (NON-INDUSTRIAL)

1. MATERIAL STORAGE
2. SHIPPING / RECEIVING
3. SCRAP ALUMINUM BIN
4. TRASH BIN
5. COMPRESSORS
6. PACKING
7. PROPANE

MAP NOTES:

1. SERVICE LAYER CREDITS: SOURCE: NEARMAP
2. COORDINATE SYSTEM: NAD83 CALIFORNIA STATE PLANES, ZONE III, US FOOT.

Pavement resurfacing shown in RED

VERNON AVE

OFFICE BUILDING

MANUFACTURING ASSEMBLY

SP-1

PARKING LOT (NON-INDUSTRIAL)

OFFICE BUILDING

DA1

STORAGE BUILDINGS

WINDOW LINE

WAREHOUSE

0    60'
SCALE IN FEET

SITE MAP
ARCADIA INC.
2301 E VERNON AVE, VERNON CA 90058

Geosyntec
consultants

PROJECT NO: CWR0907    JUNE 2024